All right, the first two matters are cases arising out of the same suit in the District Court brought by the State of Maryland and the District of Columbia against the President under the emoluments clauses. And in case many of you are not familiar with the Constitution, the first emoluments clause is the foreign one, which says no officer without consent of Congress shall accept any present or emolument from any king, prince, or foreign state. And the second emolument clause is the domestic one in Article 2 says the President shall receive compensation for his services and shall not, during his term of office, receive any other emolument from the United States or any state. So those clauses are the subject of the suit. And the first matter is a mandamus petition filed against, filed by the President in connection with his, the claims against him in his official capacity. And the next matter we'll hear is the claims against the President in his individual capacity. So we'll hear from Mr. Maubin for the President, for the, yes. May it please the Court. There are multiple fundamental defects in this extraordinary suit that warrant mandamus relief. I'd like to begin this morning with the most serious of them, namely that there is no authority to sue directly the President of the United States in his official capacity. Now it is undisputed that there is no express cause of action either in the Constitution or provided by Congress. What plaintiffs instead argue is that they have an implied cause of action in equity. Now the Supreme Court made clear in Armstrong that the implied cause of action in equity against federal officials is only appropriate in some circumstances in a proper case. And what the Supreme Court made clear in Grupo Mexicano is that equity... Are you saying that the President can't be named as a defendant in a suit while he's in office? Not in an official capacity suit, Your Honor, and more precisely, certainly not without Congress having expressly authorized it. So the question in the case is whether there's an implied cause of action in equity. And what Grupo Mexicano makes clear is that the equitable jurisdiction of the federal courts is limited to the traditional forms of equity relief. And if a certain type of equity relief is not traditionally authorized, then Congress must expressly authorize it. That Grupo Mexicano lays this out in great detail, and it's perfectly consistent with what the Supreme Court later said in the Abbasi decision, where they explained that the recognition of a cause of action, the recognition of the right to sue, is a quintessentially legislative prerogative, and it asserts the separation of powers for the courts to recognize a cause of action that Congress has not provided. So now the question in this case becomes, is there a tradition of equitable relief against the President himself in his official capacity? Plaintiffs have certainly identified no such history, and no such history exists. To the contrary, on the handful of times where someone has tried to sue the President in his official capacity, and the question has reached the Supreme Court, the Supreme Court has roundly rejected it. The district court said, though, if I read him correctly, and I think I did, he's concerned about a President run amok, violating the Emoluments Clause left and right, and somebody has to be there to hold him accountable. Under your view, how is that possible? Well, again, Your Honor, the first question is whether Congress has authorized a cause of action. This is a quintessential legislative judgment about whether to authorize a suit. But I didn't ask you that, but I said, what do you do then? Where's the check on the President? So, again, just as in, for example, in Nixon v. Fitzgerald, the same argument was made there, that if you don't recognize that damage is action against the President, the President will be above the law. And what the Supreme Court said is that the President is unique in the executive branch. He's entitled to immunity. So, are you suggesting there's no check on the President? I'm suggesting at a minimum that the checks that have to exist would have to come from Congress. So, in other words, Congress would check him? Congress could provide a cause of action, and then we would have to address the difficult constitutional question that has been presented in cases like Mississippi and Franklin, whether Congress can do that or whether it violates the separation of powers. Would Congress have to create a cause of action? Could Congress not just take action under the amendments called, Mr. President? Well, I don't think that Congress could sue the President. I didn't ask you that. But Congress, of course, could exercise all sorts of forms of oversight with respect to the President. The Congress has other remedies.  That's not what I asked you. That's what you want to talk about. But I said if there's not that right of cause of action, is there a check on the President? And you say there is by other steps Congress could take. That's right. Is there anything in the structure of that language that makes you think Congress is the appropriate body to do that checking? Well, certainly for the Foreign Monuments Clause, the authority of Congress to consent gives some suggestion of it. But I think the bigger point, the one that applies to both the Foreign and the Domestic Monuments Clause, is a greater structural point. It's the point that the Court made in Nixon v. Fitzgerald and in Franklin and all the other cases, which is that the President is unique in our constitutional structure. All of the Article II executive power is vested in him uniquely. And at a minimum, before he can be subjected to suit, Congress should have to expressly authorize that. Assume you're right on the cause of action, just for the sake of this discussion. We're here on a mandamus. And in particular, you're asking for a mandamus to certify a question under 1292. As best I can tell, in Cheney, we had a decision where there was, by the Court's description, overbroad discovery. In the Inouye U.S. case from the Ninth Circuit, when we're dealing with certification, they actually declined mandamus because no discovery has been sent here. We got some discovery here, but it's third-party discovery. Are we at a point where we are at a crisis, even under your view, before any discovery has even been propounded against the President? Yes, Your Honor. If you agree with us that the President is not subject to suit, then I think that the easiest path to mandamus in this case is just directly to mandamus the denial of the motion to dismiss. It's no different than what this Court did in the Henry Sewell decision. In Sewell, the mandamus was granted in a district court against district court action that shouldn't have been in district court because it should have been an administrative agency. But to do that, we have to decide there's a clear and unrefutable right on those issues. And I understand your arguments, but that's what we'd have to define. Really, there's no way to even look at the other side of that point. You agree with that? I agree with that, Your Honor. And I do think that on the question of whether the President is subject to suit, the fact that Franklin and Mississippi both squarely say, as a general matter, the President's not subject to suit in its official capacity, clearly an indisputably established proposition, as do Grupo Mexicano and Abbasi, both of which emphasize, again, we're not asking this Court to say it would be unconstitutional for Congress to subject the President to suit. All we're saying is that, at a minimum, they cannot infer an equitable cause of action in the absence of any history of such a suit. And given the serious separation of powers concern, that suit presents. But given the mandamus issue, I mean, I understand the position there. But the real issue I think you are asserting is there becomes a separation of powers issue. And the point you talked about can be raised at any point. I mean, there are cases all the time that get litigated where there's one side thinks there's no cause of action. This really, and I realize we're dealing with an argument on separation of powers, but doesn't the issue really collide once there's discovery or action taken? Why do we not have to have some event like that? Senator, again, I don't think that's consistent with this Court's precedent in Sewell. Again, in Sewell, the issue was not that there was going to be discovery in the district court action. The issue was that the case should not have been in district court at all, because it belonged in the jurisdiction of an administrative agency. And I would submit that the jurisdictional class there pales in comparison to the jurisdictional class here of subjecting the President of the United States to a lawsuit when he should not be subject to one. Is that because of the status of the President as President, or is it because the emoluments clauses don't create a cause of action? It's the status of the President as President. Both in Cheney and in Clinton v. Jones, the Supreme Court made clear that the respect due for the high office of the President is something that affects the conduct of the entire proceedings. The entire proceedings. At a minimum, that should mean that if the President has a clear and indisputable right not to be sued, he's entitled to immediate dismissal. And if a district court fails to dismiss when it should have, the President is entitled to... But why do you make of the claim that there is a cause of action under the emoluments clause? You don't believe that, do you? We do not, Your Honor. Again, not... I know this is separate and apart from your claim, whether it's there or not. It can't be against the President unless it's expressed very clear. But a good question, I think, from Judge Niemeyer. You're throwing away the second part of that? You're just not addressing it because it's not your main point. We certainly agree that even separate and apart from the President, it wouldn't be appropriate to infer a cause of action under the emoluments clauses, generally, and certainly not for these particular plaintiffs. But we do think these cleanest... Does anybody under the foreign clause... It applies to any officer. And the question is, could a state bring a suit against the Secretary of State for accepting an emolument? And we don't think so, Your Honor. And there are a couple of reasons. Certainly not these plaintiffs. Again, even if you assume that there's... If this isn't about the President, if it's just any old officer such that they can invoke Armstrong, which provides a general cause of action in equity against federal officers. The Supreme Court has made clear in cases like Lexmark and Bennett that the plaintiff has to fall within the protected interests of that cause of action. And the Supreme Court has made clear in Clark that if you're invoking an implied cause of action, that's a particularly rigorous standard. Here, there's no dispute that the point of the emoluments clauses, the purpose that they are intended to serve, is to protect against the corrupting influence on official action. And by and large, those are not the interests that they seek to vindicate. What about the fact that some discovery has been ordered? What do you make of that as part of your argument? Well, we certainly think that the fact that discovery is proceeding against, in a suit against the President's official capacity, is part of the reason why we are here on mandamus. I know it's that, but does that add to your argument? It seems to me there is a claim that a district court judge, and we all used to be that, that a district court judge has a great deal of discretion. And sometimes, oftentimes, a district court judge, not the three of us, but others will make mistakes. And when that happens, you don't get an immediate appeal, generally. You wait until something else happens. But I kind of thought that maybe there was an argument that you would make that the mistake on allowing the suit to go forward, which you've already talked about, plus then action, which is this discovery, which is not any small matter, because I've read what they've requested. I thought that would be something that would add to the impetus to take the decision on at this point. I agree. I do think that... I didn't so much want you to agree. I was asking, is that what you... Yes, as we argued in our briefs, the existence of the discovery underscores the importance of why this court should exercise mandamus relief right now. But I do want to emphasize that it is not necessary to our argument. As we discussed in Sewell, the question was, the mandamus was granted even wholly apart from discovery because of the improper nature. But the point being that the mandamus, which is a rare remedy to be granted, correct? Yes. But that, if you look at it, for it's not just a judge's decision, but it's a judge's decision basically emboldened with action, which is now the point... He's not only, in your eyes, made a wrong decision, but he's now acting under that decision in a way that creates what you call a tremendous burden on you. That's correct. So putting those two together might in some way assuage the concerns about mandamus. That's correct, Your Honor.  about why these plaintiffs can't sue. So as I was saying, the emoluments clause is intended to protect against the corruption of official action. The injuries that these plaintiffs are asserting almost entirely have nothing to do with that corruption of official action. What they are complaining about is that they are suffering, either they or their citizens are suffering competitive injury, i.e. not that the emoluments are going to corrupt the president's official actions. Instead, what they're complaining about is that they want to compete with the president to receive emoluments from foreign and domestic governments. There is simply no support in the history of the emoluments clause. I suspect they'd be willing to admit their complaints add corruption if you insisted on it. But they are not challenging, they are not saying that their injury flows from the corruption of official action. They have not identified any third party who is providing the president with a monument that is going to corrupt his actions in a way that injures them. That's simply not the claims that they've asserted. They have no factual basis for it. Take, for example, the only example, and it wasn't even in their complaint, the district court, and they added it post-complaint in their briefs, of a situation where a so-called other state competitor is giving the president what they would allege to be emoluments in a way that could injure them. The example they have is the governor of Maine stayed at the hotel and sometime afterwards the president took certain actions with respect to a Maine national park. They have no argument for how that national park in any way injures them. They have no allegation of the type that even within the remote ballpark of what the monument's cause was intended to deal with, which is protection against corruption of official action. You know, I suppose if, I don't know, and I'll be asking them what kind of relief they want, but if they had relief in which the president was, say, removed from his businesses or put it into a blind trust or somehow disengaged from his private enterprises, in such a circumstance there would still be the hotel there called the Trump Hotel. And the question is, it's still a competitor and probably would still affect the competitive injury they're claiming to the convention center in Montgomery County. So that is true as well, and that's part of the reason why they don't even satisfy the bare minimum of Article III standing, because even their competitor injuries are inherently spec lit for many reasons. That's the only injury that the district court relied on, really. A little bit of the sovereign, I'm not sure I understand the sovereign injury, but the injury they are alleging is this competitive injury. Right, and I agree that the competitive injury is spec lit for multiple reasons, including the one Your Honor just identified, which is they themselves, all their arguments about how foreign governments want to curry favor with the president, there's simply no reason to think that that is limited to his financial interest. Their own amici say things like foreign governments will seek every advantage in currying favor with the president. So the idea that if the hotel was instead owned by his family, or he personally didn't have a financial interest, the idea that that would affect any of these decisions in a way that would injure them is inherently spec lit, let alone in the case against the president of the United States. I suppose the argument is that the foreign persons staying at the hotel go there because the president owns it, and they want to be providing him with financial benefit to show favor. That's their argument. That is their argument, but it's doubly spec lit. It's first of all spec lit that any of those people would not stay there if it wasn't going to give him financial benefit, but instead his family. It's also spec lit of whether they would have stayed at one of the plaintiff's properties if they didn't stay. You know, that's why they want discovery, I think. Well, you don't get to get into that motivation, I suspect. They do, but you don't get to skip over the threshold requirement of adequately pleading standing to get discovery to show that you have standing. They have to adequately plead at the outset that they have a non-speculative injury, and they simply cannot. Go back to the issue you started with about the ability to sue the president in official capacity. How does Clinton versus New York square with that argument? So Clinton versus New York? The case about the line item veto. So the court didn't address the question about whether the president himself was subject to suit in that case, and there is a footnote in the case that makes clear there were other defendants besides the president who were sued in that case. But it was a suit against the president that proceeded, and there was a declaration at the end that the reversal of the payments to the New York hospitals, I think, had to be reversed. I mean, there was no holding that the president couldn't be sued in that respect, correct? I think it's a drive-by on this issue, Your Honor. The court has recognized in cases like Steele Co., unless the court squarely addressed the question, you shouldn't treat it as a holding on a question like whether the president would be subject to suit. You shouldn't read Clinton to implicitly overrule the decision just five or six years earlier in Franklin versus Massachusetts, which reaffirmed the rule of Mississippi versus Johnson that as a general matter, the president is not subject to suit for his official duty. Doesn't that, do you believe that the Franklin case leaves the possibility of a claim against the president for relief that's ministerial in nature? So I think both Franklin and Mississippi do hold open the question of whether truly ministerial action could be subject to relief. But I think what's important is Mississippi itself makes clear that this is not such a case. Ministerial, within the meaning of Mississippi, is something that leaves no discretion and no judgment. It's a finite action. Clearly, whether he is complying with the Emoluments Clause does not meet that. If any further doubt is recognized about that, just look at the lengthy opinion from the district court analyzing the question. There's no way anyone can credibly argue that this is a specific duty of which there's no dispute. What they argue is that, of course, he can't violate the Emoluments Clause, so he's got a duty. But so too in Mississippi, of course, President Johnson couldn't have violated the Constitution. The claim there was that the act of Congress that he was enforcing was unconstitutional. The question isn't whether you have a duty to not violate the Constitution. Of course you don't. The question is whether it's clear and indisputable that what the conduct at issue is a violation of the Constitution, such that the court could say it is purely ministerial. Of course you have to do it. And this case certainly does not meet that high standard. It sounds like you, in the briefs, the impression I got was that the President's primary argument was that we should grant the writ to certify, to order that the certification take place. It sounds today like you're maybe reversing that and suggesting dismissal is what you're seeking predominantly. We think that there are multiple fundamental defects in this case, and mandamus could be provided through either route. We do think that the simplest path for this court to adopt is to say that it's clear and indisputable that the President is subject to an implied equitable action, and that under Sewell, that warrants mandamus relief against the motion to dismiss. On the equitable action, do you understand that to be constrained to the same structure that Ex parte Young is? In other words, Ex parte Young seeks to enjoin a defense to something that otherwise could be brought by the government. And this is sort of an open-ended equitable action, just saying basically, I'm enjoining you. I want an injunction to enforce the Constitution against the President. So we agree that this is the sort of action as Ex parte Young. We also agree with Your Honor that the traditional type of Ex parte Young action is the sort that you would refer to where it's a preemptive assertion of defense. The reason why that is the traditional form is precisely because it doesn't present the serious separation of powers concerns. It is the sort of situation where the lawsuit  and you're just affecting the timing and posture of the case. When, as here, you instead are bringing an affirmative enforcement action, there are much greater separation of powers concerns. Now, we're not saying that there's a blanket ban on bringing affirmative enforcement suits. They are right that there are cases that have recognized those suits. But what we are saying is it's got to be the type of suit that has been recognized in equity. And in this circumstance, both given the type of defendant, namely the President of the United States, and the type of plaintiffs, namely states that are not within the zone of protected interest of the Emoluments Clause, certainly this is not the type of action that you could bring. It seems to me you'd have to include in that formula in order to distinguish it from other equitable actions the fact that the clauses don't create causes of action. They do not have persons identified as being protected and suggesting some kind of implicit cause. That's right, Your Honor. I think the threshold argument you can make that could apply to the entire cause of action would be to say that the traditional ex parte type cases, even the affirmative cases, always involve suits where plaintiffs are arguing that the defendants are infringing on their personal property or liberty interests under the Constitution. And for example, in ex parte, the argument was that the state statute was violating due process in regulating the railroad in that case. They are not arguing here that the Emoluments Clauses confer a personal right, or they cannot argue here that the Emoluments Clauses confer a personal right with respect to their property here. Because what they're challenging is not their property rights. What they're challenging is how the president is engaging in commercial business transactions, and then they're simply complaining about what they perceive to be the indirect economic effects of that on them or their citizens. I'm not aware of any type of ex parte young action that has that aspect. And again, under Grupo Mexicano, for there to be an implied equitable cause of action, they bear the burden of showing that that type of suit would have been recognized as a traditional equitable remedy. And there simply isn't any support for that. Let me go to an issue of redressability. It seems to me this suits the suit in the president's official capacity. Is there anything the president can do under the plaintiff's definition of emolument in his official capacity to redress their concerns? So, I think it is right to say that the only thing he could do, quote, in his official capacity to redress their concerns would be the resign office. The other thing they can do, he could do obviously, is divest the financial interest of which they're objecting. I would resist the suggestion that that is not official. To be sure, it involves his personal financial assets. But their entire plaintiff's, this is not a case like Clinton versus Jones, where the claim against the president was entirely unrelated to his holding the office of the presidency. Here, what they are arguing is because he holds the office of the presidency, there are constraints on his personal business interests. And so, I would submit that what he does in response to that is very much part of his official duties. And they certainly think that, don't they? Because they filed the official suit, basically asking for what has to be divestment. They certainly do. If they think that that is not at all official capacity, then the suit against the president's official capacity should, of course, be dismissed for that reason alone. And since they themselves are trying to dismiss the individual capacity suit, this case should be over. I would have thought you had argued that because the relief of divestment is individual in nature, it's relief that cannot be obtained in an official capacity suit. Your Honor, I think the Emoluments Clause is this weird hybrid where it's because of your official capacity, there are constraints on your personal conduct. For that reason, we haven't made the argument that no relief is available if there were otherwise a cause of action. If, for example, Congress had provided an express cause of action against an inferior officer for violating the Emoluments Clause and there were plaintiffs who fell within the zone of interest in controlling Merrick's claim, we haven't argued that in those circumstances. You couldn't provide a remedy, but every single step of what I just said is not satisfied here. There isn't a cause of action. It is against the President and the plaintiffs are not within the zone of interest. All right. Thank you, Mr. Moten. You have some rebuttal. Ms. Alikhan. Good morning and may it please the Court. Lauren Alikhan for the respondents. The President is asking for two forms of extraordinary relief. First and foremost, he's asking that this Court use 1292B or use the right of mandamus to require certification of the District Court's orders under 1292B and every Court to have expressly considered that question has found mandamus to be an inappropriate vehicle and that is because Congress has laid the first line of discretion with the District Court in determining whether or not to decertify an order for 1292B. You can't imagine any situation in which it would be appropriate. So I believe that mandamus could be appropriate if the District Court failed to conduct the 1292B analysis, but I think following this Court's case in Enriquezca, where the Court has conducted the 1292B analysis and found that certification is inappropriate, this Court is without appellate jurisdiction because 1292B is a limited exception to the final judgment. Let me ask you a situation though. What if it's just a hypothetical? Everybody but the judge realizes he's got the law wrong on that point. Everybody realizes that. And then he also orders some other action that's crushing or very, very burdensome on the other party. And then he undertakes that analysis and goes, I'm not certifying. That wouldn't allow for mandamus. So I think that's the situation that you see in Cheney, where what was mandamus was the discovery. But I'm asking you about my hypothetical. You say even if everybody in the world but the judge knew he was wrong on the law, he had it absolutely wrong. It undertook the certification, got that wrong, but did it, as you said. And he also orders what is a crushing burden on the other party. That's just the way it is. So I think under 1292B, yes. When Congress was considering 1292B, it considered a proposal where the Court of Appeals had the only discretion as to whether or not a question should be certified and expressly rejected that. What would be the relief in my hypothetical? The relief in your hypothetical would be to seek mandamus from the underlying order. I think the discovery order, as this was in Cheney. Well, they have here. They've sought mandamus directly on the refusal to dismiss. So they have sought mandamus, yes. And it seems to me, you may have a good point on 1292B, but they have two promises in a mandamus petition. And the prong, which they've emphasized today, is a direct review of the refusal to dismiss the claim. Absolutely. So they can seek mandamus, but in order to be entitled to it, they have to have a clear and indisputable right to relief. Well, they claim it's clear. They claim you can't sue the president in these circumstances. And we dispute that as the district. Well, let's hear about that. So, I mean, in Clinton versus Jones, the Supreme Court said that the court has long held that when the president takes official action, the court has the ability to determine whether he acted within the law. And Armstrong, in a long series of cases, hold that the courts have equitable jurisdiction to enjoin unlawful- What was the official action you're challenging? The official action is the acceptance of emoluments, which is in violation of the Constitution. The Constitution- What act did he take? I thought he pulled back from the management. He has his son managing the hotel and he gets reports every quarter. But he's not taking an official action. He- The argument is his simply passively holding that interest is a violation of the two emoluments clauses. But it seems to me you ought to be addressing the question of whether the president's violation of the emoluments clauses gives right to anyone to sue the president while in office. So the president has chosen to keep his business holdings while in office, thereby having an entity through which individuals or governments can tender emoluments and then he can accept them. By having that ownership stake in the Trump International Hotel, he has a place where the emoluments can be accepted. So yes, he has stepped back, but he has not divested. He has not put the assets in a- What is the remedy you want in this case? So we have sought both declaratory and injunctive relief. I know the declaratory, but what is the- What do you want enjoined? How would you describe the order? So I think it would depend on the circumstances at the end of the case. I think divestment could be an appropriate injunction. However, I think declaratory relief would also- could be a complete remedy. You've asked for injunctive relief. Are you giving that up? No, not at all. Well, then I'm asking you for the form of relief you're requesting. And I believe that it would depend on the circumstances of the case. However, I think divestment is- could be a proper injunctive relief. How could there be anything other than divestment? There would still be a violation of emoluments absent divestment, wouldn't there? So I say divestment is a possible injunctive relief. I know that I'm asking you, how could there be anything else you were seeking? Because under your view of emoluments, anything short of divestment still creates an emolument. I think that could be correct. That could be. It is. I'm saying, though, that a declaration and then allowing the president to figure out how to comply with that declaration may be sufficient relief. Look, don't fall back on the declaration when we're asking you about the injunctive relief unless you're going to give up injunctive relief. See, we understand you're seeking declaratory judgment. But the question is what kind of injunctive relief would you request? Are you requesting? We have requested injunctive relief as the court deems appropriate based on the facts of the case. As you see the facts now, you allege them. What other than divestment do you think is appropriate? So as I stand here today, divestment does seem like the appropriate remedy. Is there anything else that solves the concerns you have? I mean, we do believe, I know you were talking about injunctive relief, but we think a declaration could be very powerful at remedying our injury. We got that. I'll ask you about that in a minute. But as far as the injunctive relief, if I understand your argument, understand your filing and your brief, I don't think anything short of divestment would answer your concern. So I think divestment could, perhaps a blind trust. And I think we have here- Well, how would a blind trust do that? He would still benefit from that though. He would benefit from foreign dignitaries going to his hotel and he would know it. Right behind his motorcade, you see his estate going in, he would know it. You think a blind trust solves the emoluments clause as you are contending it? Again, as I stand here today, it is hard to say what at the end of the case- It's not hard to say. A blind trust is, everybody understands that. And the argument would be, he would make the argument, I'm holding it in a blind trust. Your argument would be that notwithstanding the blind trust, he's still receiving emoluments in violation of the clauses, right? So yes, I think our first line position- Why don't you get back to Judge Shedd's question, is other than divestment, is there any other form of relief you could be or would be asking for? So yes, I think divestment, I also think that a declaration could be powerful. And I think that federal officials over time have put their assets in blind trust at the direction of federal officials. And so I think- Do you think a blind trust would be sufficient in this case? In your theory of emolument, do you think a blind trust would be sufficient? I think that it depends on the facts on the ground. We don't have discovery- The facts on the ground are it's a blind trust. He takes everything he owns and puts it in trust to be managed by somebody else. And he's removed from it while he's president. Do you think that solves your emolument concern? At this stage, I'm not willing to concede that it wouldn't. So I do think divestment is the cleanest option. A declaration is also sufficient. Well, just walk through your theory, though. Walk through your theory. Don't you have a concern that those hotels and other things- And the fact is, I think you even want him fired from The Apprentice, don't you? Didn't you ask for that? I don't believe so. I think you did. Yes, you did. You certainly did. You asked that he get rid of The Apprentice. So you want him fired from The Apprentice, too. But at any rate, but at any rate, if he puts stuff in a blind trust, he still won't benefit from what foreign dignitaries or whoever you say would be prohibited would do for that trust while he's president. I leave open the option of a blind trust because that is what federal officials historically have done at the Council of Federal Ethics Officials. You know, you don't seem to be wanting to answer the question. The question is a fairly simple one. Does that solve the problem under your theory of the Emoluments Clause? The Emoluments Clause prohibits the receipt of emoluments from a king, a prince, or a foreign state, at least as to the foreign one. Now, if the king or the prince stays at the hotel and pays the hotel the fees, giving profits to the hotel, that goes into the blind trust, right? Yes. All right. Now, is that violate the Emoluments Clause under your theory? In our view, if it is a... Yes or no? It may. It very well may. So let's presume a divestment is the option. So we've asked the court to entertain equitable relief as he deems appropriate based on the facts at the end of the case. Some of that will be informed... I know you're missing the point though, but if everything goes the way you want it to, what would be the relief you would find appropriate to solve your emoluments concern other than complete divestment? Can you name one? A declaration to not violate the Emoluments Clause. I know the declaration is different. By the way, do you think if you got a declaration, you would want a declaration of the violation of the Emoluments Clause? A declaration that he's violating the Emoluments Clause would be very powerful. Do you think that would be the basis for a high crime and misdemeanor for impeachment? That declaration. I don't believe so. I think a declaration that what he's doing is violating the Emoluments Clause and an injunction to not do so. And then we can... But you don't even know, you don't even know, you filed the lawsuit and you don't even know what relief, real, actual, real world relief you think would satisfy your claim of violation. I believe it depends on the circumstances of how he's violating the Emoluments Clause. It depends on what you're asking for. Every lawsuit asks for a remedy and you have shaped your lawsuit and you seem to be ducking the question you're asking for injunctive relief and we're asking you what is the relief you're asking for? And you know the facts, you've alleged facts over a long complaint, you have a theory of the case and basically what I'm taking from this argument is that your form of relief would be an injunction requiring the president to divest himself of all his assets. We believe that is an option, yes. We believe that's an option. Are you requesting it? We have requested the district court to enter the relief that he deems appropriate. But the district court is going to make this up? Based on the facts, if we establish he's violating the Emoluments Clause in a particular facet, the injunction can be tailored to that. Let's assume he has these interests that you've alleged and he's receiving profits from states and heads of states in all his various hotels and to all kinds of business entities. He's receiving these things. Now, those are the facts you're alleging. The question is, what relief do you want? This is your lawsuit. It is indeed. And our relief, the relief that we sought in our complaint, is a declaration, an injunctive relief as appropriate. Standing here today, divestment could be that relief. Absolutely. If he is violating the Emoluments Clauses and he is told to stop doing so and a divestment from the Trump International Hotel. You're going to stand before the district court and say, do what you think is appropriate? And after he declares this is a violation of the law and you stand there and you say, do what's appropriate. He says, what do you want? And you said, oh, do what the facts show. There would be briefing about what would be the appropriate remedy. But I don't think this court needs to- Would you be satisfied with the prohibition of anybody who could possibly be associated with a foreign government doing any business with Trump? He wouldn't have to divest. But when I say Trump, I meant the Trump holdings. Would you be satisfied with a prohibition issued that no person in association in any way with the foreign government could ever be involved with or stay at a Trump property? Would that suit you? I think it depends on the way it's worded. I just worded it. I just worded it. The president is the one who's violating the Constitution. No, no, I'm saying with that, would you be satisfied with that take away the emolument issue? So an injunction preventing him from accepting foreign and domestic government business may very well be an option. So that might satisfy you that at the Trump businesses, nobody who is associated with the foreign government funded by them or maybe appears to be associated with them could stay at his businesses. And I think that follows from an injunction not to violate the emoluments clauses. And so let me just get this straight. So if he then said, a little reminiscent of the travel ban, no foreigners can stay in any of my properties. How long before the state of Maryland sue him for discrimination? So it's not that no foreigners, it's no foreign governments. The domestic and foreign emoluments clauses. I don't own that foreign. How he chooses to comply with a declaration that he's violating the constitution. So what you want to do though is make it a guessing game for him. I do not want it to be a guessing game, Judge Shedd. What I would like it to be is at the remedial stage, we can determine. I know that, but you should know what you, I've read and I've tried to figure through. Let me ask this. Do you agree with the district court's definition of emolument? He says even a fair market transaction is still an emolument because in that fair market value, the hotel still makes some profit. Do you agree with that? That is correct. Emolument is any profit, gain or advantage. And even in a market transaction, he is getting a profit that would otherwise go to either our businesses. So then would you be satisfied if the Trump hotel gave a break to foreign associated people so they paid less than Americans to knock that profit margin out? Would that take care of the problem? No, I don't think it would because the purpose- Why? Then that would eliminate that part of his profit. Respectfully, I think this just shows by talking about the specifics of a particular injunctive remedy is premature at this stage. It's not at all. It's not at all because I've never- I think one of the most important things is for a lawyer to know what remedy a lawyer wants before you engage in litigation. It also goes to redressability. And the real question is how is your claim redressable? Our claim is redressable because looking at, for example, the friends, patriotic competitors standing, we are suffering and our resident properties are suffering a competitive disadvantage by virtue of the skewed market because- All right. So we order, according to your request, we ordered the president to divest himself of his interest in the hotel in Washington. That's the one at issue. And he, in fact, conveys his interest to his family  Now, all the foreign heads of state and all the governors around the country, they stay at the hotel. How does that affect your redressability interest? You have the very same problem. So respectfully, that presumes there are only two classes of economic actors, those that will always stay at the hotel and those that will not. That's not the- that requires some speculation. We knew- The whole thing requires speculation. That may be one  I mean, the question is Maryland is saying the state of Maryland is injured because the president is taken in a monument at the hotel. That's what the state of Maryland is saying. And the way you argue it and develop it is to say the people staying at the hotel might otherwise stay at Montgomery Convention Center or have a place at the Montgomery in Maryland. And therefore, or- or Harbor, the Harbor. Or they may host their events at the Washington Convention Center or they may have them at the hotel in the district. But the point is Maryland is suggesting that that would happen, that they would go there if the president didn't have his interest in that hotel. And we know that to be the case because we've had and we allege in our complaint, I believe it's Kuwait, Bahrain have moved from non-Trump properties to the Trump International Hotel by virtue of the fact that he is president. All right, so you don't think they would still go there with his son running it? Well, I think under the redressability cases and competitor standing, what we have to show is that it will level the playing field. It will take the unconstitutional monument out and then the rational economic actors can make the choices of where to stay based on the normal competitive factors. We do know that there are governments that have held events at our properties and of properties under our parents' patriarchy before and then have moved that business to the Trump International Hotel. So that does show that his status as the owner of the hotel, his status as president is a driving factor. I'm sorry to interrupt, but what's your authority that allows you to bring a suit against the president in his official capacity that can be remedied only by divestiture or other acts taken in an individual capacity? So this is an interesting point and one that DOJ and us agree on. As they stated in their statement of interest in the individual capacity action, the clauses apply to the president because he is president. I understand that's your position. What's the authority? Assume I were to conclude, the court were to conclude that the conduct that you're saying relieves the wrong that you say exists is individual conduct. What's the authority that allows someone to sue the president or any officer in their official capacity and obtain relief that can only be accomplished individually? So the relief isn't accomplished individually. Assume we think it is. Is there any authority that allows you, that allows one to obtain relief from an individual capacity by a case brought in the official capacity? So no, but that's because this is not individual relief we're seeking. And DOJ agrees on this point. I understand that position. Because he is president and it gets at the conduct, both his public and private conduct by virtue of his status as president. So in that way, an injunction requiring him to stop accepting emoluments is getting at his official conduct. And so I don't think there's any dispute about this between the parties that that injunctive relief, even if it gets a private conduct, is something that because the prohibition is because he is president, is within this court's hand. Is there anything, is there any case in reviewing the cases that y'all cited in all your briefs, it seemed like all the cases involve some action taken as president or that was the subject of the claim. And I understand your argument now. Your position is the acceptance of the emoluments is the government action that you're complaining about? So I think this is like Larson and Dugan. He is violating the Constitution by virtue of being an official, but he's doing so in an ultra virus way. As president, he's not allowed to accept emoluments. So therefore, if he is held to the terms of those constitutional provisions, if there's a declaration that he's violating them and injunction to stop, then he has to order his affairs consistent with that. And that would then bring him within Larson and Dugan back into the vein of his practice as president. Your definition is the same for the domestic and the foreign calls, correct? Yes, the word emolument, as we see from the founding fathers through current OLC and Comptroller General Opinions, is that it gets a wide swath. Does ownership of a treasury bill violate the domestic emoluments clause? So I do not believe that it does because it is something that is without discretion. It's something that one does not get any particular profit or gain. We get security in an investment. Does a federally insured bank account violate the domestic emoluments clause? So these are not hypotheticals, I think, that apply here for a couple of reasons. I understand. They would apply to anyone who wants to be president in the future based on your definition, wouldn't they? And so when presidents have faced this problem before, they have sought the advice of the Office of Legal Counsel and the Comptroller General as to whether a particular transaction at the margin We're asking your view of it. We're asking you the question. You have to answer these questions that we're asking. You don't defer to the Attorney General. I mean, if you're going to defer it to them, they would say dismiss this action. And that would be inconsistent with 100 years of OLC precedent. Well, that's why you should tell us your view. We're asking your view. We can read those other documents. Judge Shedd, my view is that it covers any profit, gain, or advantage. Whether a question of holding a particular T-bill or a pension at the margin creates a question of an emoluments clause violation is not what we're looking at here. It wouldn't. No, no, no. We have to understand your theory, though, if we're going to address it. And if you just said, I think I heard you say, my hearing's a little bit off, but you said any gain of profit. That's what you said. So any gain, then, that it would cover a Treasury bill. So I think you need to look at that. It would or wouldn't. Yes or no, then answer. Because there is no discretion involved in that transaction. It is something that- He could divest himself of the bill. I think we are looking at the definition of emolument. We are informed by historical practice. That comes from Noel Canning. And I think that if you- I understand, but he comes into office just under this hypothetical to stick with it for a minute. He comes into office and he owns a thousand of these Treasury bills. And he had them before he came into office. And while he's in office, he's now receiving interest on those bills from the United States. And other than his compensation for President. And so that theoretically, under your theory, violates the Emoluments Clause. And the answer is he could divest himself. That's what you would say. He would have to sell the bills. Is that what your argument is? It is not because under the Reagan OLC opinion, which we think expands on and defines what an emolument is, transactions that are previously vested or that do not involve discretion do not give rise to emoluments clause violations. But I have to stress what we're talking about- I thought the president in this case came into office and he turned over management of the hotel to his family. And all he does, according to the record, is he receives a quarterly report. And he receives the profits that come from foreign and domestic governments. But it's passive. It's not discretionary. He just, whatever is there, it's like the Treasury bill, isn't it? It is not passive because he is out there representing that he would like foreign and domestic governments to come and stay, that he likes them very much when they do. And he's also hired a director of diplomatic sales targeted at getting this business. This is not passive. Doesn't your theory of emoluments, it really is a protection for career politicians who want to be president because they don't have generally any business that they've grown that's associated with them. What they have might be career politicians, might be interest and all that they can put in a blind trust. So for those people, maybe it's not surprising Maryland and D.C. feel this way, governments, they don't have any emolument problem under your theory. But anybody who has grown something successfully or has business interests, they absolutely do have an emolument problem. If they are receiving domestic and foreign government payments while in office, they have an emoluments problem. So they do have it. Wait. But in the global economy, then if any of their businesses may be getting that, they have to, they would have an emolument problem. So the judge share is limited to the Trump International Hotels? No, but I'm talking about your theory. Your theory. Didn't you try to make it broader than that? In your theory, broader than the Trump Hotel? We are here today based on the Trump International Hotel. I asked, didn't you? Yes, we had broader allegations in our complaint. Right, when you alleged it, it was broader. So I'm asking about your theory. So any person who has a business that they have grown, they have an emoluments cost problem if they are fortunate enough to be elected president. And the founders understood. I'm just saying that this answer, yes, and then you can justify. Yes, absolutely. What do you think a career politician who has, who could put all of his passive, you know, stocks and bonds in a blind trust, that would create no emolument problem? Correct. I think under the teachings of the OLC and Comptroller. Is that correct? Yes. And also what you just said earlier, a blind trust doesn't solve the emoluments clause because he still receives the emolument. Historically, federal officials have been instructed to put things in a blind trust. We would not choose to bring suit if that's the situation that we were in here. What we have as a president was a massive global empire who is soliciting foreign and domestic business. Have you given up? Have you given up your theory of reliance on emoluments definition at the time of ratification of the Constitution? Have you abandoned that? Not at all. Profit gain or advantage was the definition. No, no, no. Wait for a second. For the basis of standing, you claim that was an interest and the district court rejected that interest. You know what I'm talking about, that the state of Maryland and Maryland are so much cared about emoluments that they would not have ratified the U.S. Constitution. Have you abandoned that? Absolutely. We are not pressing that sovereign interest on appeal. Just wait for a second. Have you abandoned it? It is not before this court today. We lost on it. We did not appeal on it. Of course it's before this court. We can affirm or reverse on any ground advanced to the district court. And so the question is the appeal challenge is what the district court did. But we can always rely on other things that you argue below unless you are abandoning them. So Maryland has a sovereign interest. Yes. Have you abandoned that theory? You didn't argue it. You didn't argue it in your brief that I could find. That's just, I'm asking you that technical question. I don't believe we had to argue it. We lost and we chose not to appeal that. We're here on mandamus of the issues on which we prevail. So I don't actually think it's properly the subject of this appeal. But to the extent the court does think that is before them, this argument that we brief below is an argument that we stand by. However, the district court found. So you haven't abandoned it in any way? No, the district court found that our quasi-sovereign. No, I asked you if you abandoned it. And I said we have not, Judge Shedd. You have not done so? No, we pressed it. We lost on it. We chose not to appeal. Let me ask you something then. And that theory is that people in Maryland care so much about a broad definition of emolument. I hope that if the courts eventually disagree, y'all don't think about seceding, are you, from the union? Well, I confess I am from the District of Columbia. So I don't think I'd be allowed to secede. But yeah. I don't know. Some people might let you. But I'm just asking because if you're thinking about that, you're speaking for both sides. We insist on keeping Judge Niemeyer. That's all I want to make that. Absolutely. And y'all be glad to give him up. Maybe don't say that. I was born and bred in Baltimore. I think you guys should have Judge Niemeyer. And I read in the papers, I didn't know anything about this. But I read in some of these papers that there is at least some claim that President Obama had a book deal that was sold to foreign libraries. And there's some suggestion that maybe those libraries could have been directed by foreign governments. Why didn't you sue, under your theory, President Obama? So I have a few responses to that, Judge. First, whether or not that was an emoluments clause violation requires a lot of facts that we don't know. Whether or not those were sold to foreign libraries. Whether those foreign libraries were. Yeah, but you could allege that. Some of what you allege and speculate. And I'm just wondering if it's so important, why wasn't that, but you haven't abandoned that reliance theory, why wasn't that used? Do you think Maryland has, or D.C. has a standing, would have standing in that case? So I think if we had concrete allegations that President Obama, while president, had violated the emoluments clauses, yes. Yeah. In other words, if, no, wait a second. So if a foreign government had been involved in directing that the books be bought, then he would have an emoluments problem under your theory. He absolutely could. I think that this case is different for two reasons. One, that conduct requires inferences of fact as to what the relationship was between the books, between Obama and his publisher. That's just a question of facts in the case. I'm asking you about the legal theory and you answered it. You said yes. That could create an emoluments problem for him too. And whether someone chooses to bring suit might depend on whether that conduct is at the margins. Could you address, before I see your time's getting low, could you address the government's argument that the president can't be sued for inequity as you're doing that? Yes. And I would say that Armstrong fully covers this. The ability to sue to enjoin unconstitutional action against federal officers is a creation of the courts of equity. If Congress has removed it, then we would not have a cause of action. But unless and until they do so and they have not done so here, we have equity jurisdiction. This court has equity jurisdiction to entertain a cause of action to enjoin an executive official from violating the Constitution. That comes from cases as far back as McNulty all the way to Armstrong. In order to invoke equity, do you have to have a cause of action to underline equity? No. It's not a cause of action. Equity isn't. Equity is a side of the court where you get relief. Right. And I think that Armstrong is actually quite instructive on this. The question in Armstrong was whether or not the Supremacy Clause gave rise to a cause of action. And what the court said is we don't need to entertain that analysis because it is well established that there is equity jurisdiction to enjoin unconstitutional acts of federal officials. So we don't need a specific cause of action. We don't need something that comes from statute. There is and there has existed since the Judiciary Act of 1789 equity jurisdiction to enjoin unlawful actions of executives. And now just to respond to DOJ's point that because— And the case you're relying on is Armstrong. I think that comes from Armstrong. That comes from McNulty. That comes from Free Enterprise. And there is a long history, even preceding Ex parte Young, where federal officials have been held to conform to the Constitution. I think the government is very clear to say a suit against the president. And a suit against the president, I think the NDEU case in the D.C. Circuit speaks to this. It's often the case that there are other subordinate officials that can be sued. But where that is not possible, and here it is not possible because this applies specifically and only to the president, that it would be form over substance to hold that merely because no one else can be sued, the president himself then can't be sued. And so I think NDEU squarely addresses this question. And I think that needs to be read— You don't give any deference to the fact that the president is the president under our Constitution and is the head of the executive branch? No, I think Clinton versus Jones explains that the president, when he takes official action, a court can determine whether or not he's doing so in compliance with the law. And the fact that he's the president, it may at the margins affect things like discovery, which I think is a factor why we're here. He's not entitled to mandamus because he's the president. There's no final judgment exception because he's the president. He is a litigant for purposes of this suit. Presidents have been sued over time in equity. And as NDEU explains, where there is not a subordinate official to be sued, the injunction can run against him. This is also not a Mississippi versus Johnson problem because we do not think that we are asking him to undertake any positive duty, which was an issue in Mississippi versus Johnson, nor do we think that this involves discretion. The clauses are a negative duty. Thou shall not accept emoluments. We are not asking him to commandeer the troops in a particular way or to take any particular affirmative action. We are asking him to abide by the terms of the Constitution. I do see I am over time. So I'm happy to continue if... No, that's fine. OK, thank you. We would ask that the court deny the petition. Thank you. I understand. OK, Mr. Moffman. May it please the court. So I think that last colloquy is quite instructive. When asked what the authority and equity is to sue the president, she listed the series of cases, none of which involved the president. And what we know from Grupo Mexicano is that the precise form of relief that's being sought has to have existed traditionally in equity. Grupo Mexicano, the issue in that case was whether a creditor could sue an injunctive relief to prevent the dissipation of the debtor's assets. And what the court held was you can do that if, but only if, you have a judgment against the debtor. That was the traditional form of relief, and you couldn't go beyond that without Congress. So to hear, yes, there is a long history of equity of suing inferior executive officers. That says literally nothing about whether you could sue the president of the United States. The Supreme Court has made this abundantly clear in both Nixon versus Fitzgerald and Franklin versus Massachusetts. In both of those cases, there was a general cause of action. In Nixon versus Fitzgerald, it's put 27 of the opinion. The court says, we are willing to assume that there was a Bivens action here. I understand your colleague to be arguing that there is a cause of action in equity. Forget the defendant, it could be a lower official. When the lower official violates the Constitution and that, therefore, the cause of action aspect is satisfied because courts of equity haven't entertained violations of the Constitution. And so that would leave the question of who could be the defendant if she's right about that. And that's my point. You can't just forget the defendant. What both Nixon versus Fitzgerald and Franklin versus Massachusetts squarely held was even assuming there's a general cause of action in Nixon versus Fitzgerald and footnote 27, it was a Bivens action or an implied damages action. In Franklin versus Massachusetts, it was the APA. Both of those were causes of action, but neither of them expressly covered the President. And what the Supreme Court said was absent a clear statement from Congress, they were not going to extend those causes of action to the President of the United States, given the extreme separation of powers problems presented because the President is unique. The President has a unique role under our Constitution, under Article II. He is not just any old inferior officer like the Postmaster General in McNulty or the PCAOB in Free Enterprise Fund. He is in whom all Article II power is vested. That is why he gets absolute immunity in damages actions, whereas all other inferior officers get only qualified immunity. They can't point to any basis in either case law or history to subject the President of the United States to an official capacity injunctive suit. And that analysis also disposes of the declaratory judgment, which you try to rely on so heavily. Two points about the declaratory. Well, she did fall back on the declaratory judgment, and I sort of take from her argument that's really all they really want. But she is asking for injunctive relief and the injunctive relief, I gather, the only one that seemed to fit the bill would be to have the President divest of all his personal assets. As best as I could tell from that, Kyle, but Your Honor, it certainly, I think, makes clear that one of two things is true. Either it's just not proper relief at all, but or at a minimum, it is the sort of hybrid official individual type relief that has no basis in equity. They can't point to any case that has authorized that type of relief against any officer in the United States, let alone the President of the United States. But if I can make the point about the declaratory judgment, the best that the declaratory judgment action gets them is that there's an express cause of action in general. That just puts them back in Franklin versus Massachusetts world, where there was a cause of action under the APA against any authority of the government. And what the Supreme Court squarely held in Franklin is that they weren't going to construe that to reach the President absent a clear statement given the separation of powers concerns. The D.C. Circuit in Swann versus Clinton is squarely held that Franklin and Mississippi extended declaratory judgment actions and all the reasons why the President is unique equally apply to a declaratory judgment as injunctive relief. And the last point I will make about the unique... So your point is there cannot even be declaratory relief against? There cannot. To say that a declaratory declaration that he's violating the volumes. In his official capacity, there cannot be. That's what the D.C. Circuit held in Swann versus Clinton. Isn't the law that in order to issue declaratory relief, you cannot issue declaratory relief that's broader than the injunctive relief? That was the second point I was going to make. I think it's slightly different. The point is that you can't bring a declaratory judgment action if there was no other form of coercive relief that could be brought. That's the Supreme Court's decision in Franchise Tax Court. And since they can't get the injunction, they therefore can't get a declaratory judgment. So both because of the declaratory judgment case law itself, as well as the constitutional significance of cases like Franklin, they can't get a declaratory judgment any more than they can get injunctive relief. Let me ask you a question. The district court said that if you accept the president's definition of emolument, that wouldn't result in either the termination or streamlining of this litigation. What's your position on that? I think that's incorrect, Your Honor. I think that if you accept our interpretation that if it's profit from officer employee, none of the things that they have alleged meet that definition. We don't think it was meant to cover commercial transactions. At the founding, it was why we didn't have a government bureaucracy the way we do now. Again, remember, the Foreign Emoluments Clause is not just covering the president's all offices of profit or trust under the United States. It was widespread at the founding that government officials still have private businesses, much like several of the presidents had plantations. The idea that any of those private businesses were supposed to somehow exclude anyone from a foreign government, if you were an innkeeper, you would have to say, by the way, before you could stay at my inn, I need to see are you perchance from a foreign government? That just outlandish. There is no historical support for that, and there's no historical support for the modern equivalent of it today. For example, the Treasury Bill. I frankly do not understand their argument for why a Treasury Bill is not covered under their position. There is no doubt that the interest you receive on a Treasury Bill is gain from the federal government. The only thing she said is that it's not discretionary. That's not in their definition. You could look at all the dictionary definitions you want. There's nothing in there about discretionary profit or gain. It's profit or gain. Their position is just inconsistent with modern practice and historical practice, and because they're adopting a completely... They're reading the text in isolation, not in context. That's just not how the Supreme Court has said you should interpret the Constitution. If we've cited a couple of cases, for example, Virginia versus Tennessee is the Compacts Clause. The Compacts Clause says any compact or agreement. If you look at a dictionary definition of what agreement means, it would certainly cover agreement between two states about what the land boundary is, but the court held there, you had to read it in context in light of the purpose, or for example, McCulloch versus Maryland, the Necessary and Proper Clause. If you look at a dictionary definition of what necessary means, it's usually going to say indispensable or required, but that's not how the Supreme Court necessary in the context of the Necessary and Proper Clause in context of the provision as a whole. Here, when you read the Emoluments Clause in context and in the historical operation, there's simply no support for the broad definition they've adopted. My final point I would just make is on the mandamus standard, there was no response to the Sewell decision. The Sewell decision says that you can mandamus the denial of a motion to dismiss when the district court erred in allowing a case to proceed that should have been before an administrative agency. The President of the United States is entitled to at least as much respect as an administrative agency. Thank you. We'll come down and greet counsel and then proceed right on to the next case, which is the suit, the cause of action against the President and his individual capacity. And in that action, the President's represented by his own counsel, not the Department of Justice. All right.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Dennis W. Shedd